DURHAM HOUSE DRAINAGE CO. *v.* ARMSTRONG.

*(Circuit Court, S. D. New York.* November 19, 1888.

PATENTS FOR INVENTIONS—INFRINGEMENT—DRAINAGE SYSTEM.

Letters patent No. 235,754, issued December 21, 1880, to Caleb W. Durham, were for an invention of a drainage system, which supports itself independently of the building, upon pillars of masonry on which is laid the main waste-pipe, connected at the lower end of a vertical soil-pipe, to which are rigidly fastened the branches running to various parts of the building. The invention also claims a combination of a cast water-closet fitting provided with a flange for the reception of the water-closet, with the rigid branch-pipes. The defendant's apparatus consists of a main drain laid under ground, and resting upon the earth, with the soil-pipe extending perpendicularly to the second story, thence at an angle of 60 degrees to the third story, thence perpendicularly to the roof. The soil-pipe above the angle found support from the flanges at the ends of the branch-pipes resting on the floor in each story, but was not otherwise self-supporting. *Held* no infringement.

In Equity. Bill for infringement of a patent.

Action by the Durham House Drainage Company, of New York, against James Armstrong for the infringement of letters patent No. 235,754, granted to Caleb W. Durham for an improvement in drainage apparatus.

*Tuttle, Goodell & Brooks* and *John H. Kitchen,* for complainant.

*George V. Brower,* for defendant.

COXE, J. The complainant's patent, No. 235,754, was granted to Caleb W. Durham, December 21, 1880, for an improvement in drainage apparatus for houses and other buildings. The central idea of the invention is a drainage system which supports itself independently of the building in which it is located. The object of the inventor was to prevent the escape of sewer gas, caused by the loosening of the joints and the breaking or disarrangement of the parts of the apparatus, occasioned by the settling, rocking, or rolling of the building, and the different parts thereof. This result is accomplished by laying the main waste-pipe in an inclined position upon pillars of masonry. To this is attached a vertical soil-pipe, which extends up through the various stories of the building, its lower end being screwed into an elbow, which supports it directly upon the masonry. From this soil-pipe rigid branches extend connecting it with the water-closets, the whole being supported by the vertical pipe, as a tree supports its branches. The three claims alleged to be infringed are as follows:

"(2) The combination with the drain, of the vertical soil-pipe, and a support therefor, independent of the building, substantially as specified. (3) The combination with the rigid soil-pipe, and an independent support therefor, of the rigid branch-pipe, upon which the water-closet fitting is supported and secured, substantially as and for the purpose specified." "(5) The combination of the cast water-closet fitting provided with a flange for the reception of the water-closet, with a rigid branch-pipe, substantially as specified."

Defendant has placed a drainage apparatus in a building known as "Trinity Factory." It is charged that in so doing he has infringed. The

main drain-pipe of the defendant's structure is laid in a trench beneath the surface of the ground. There are no pillars of masonry. The pipe rests on the natural earth, in a manner well known long before the date of the patent. The vertical soil-pipe is connected to the drain by an elbow joint which also rests upon the earth. This pipe is perpendicular until it reaches the second story above the basement when it runs at an angle of about 60 degrees to the third floor. Above the third floor the pipe is again perpendicular to the roof. At the angle the pipe is 10 feet, 9 inches in length, the deflection is 8 feet, 3 inches. Above the angle the weight of the pipe and branches is 2,547 pounds. This portion of the apparatus was constructed separately from the lower portion, being held temporarily in position by timbers and ropes. When completed it found ample support from the flanges at the ends of the branch-pipes resting upon the floor in each story. Had it been independent of the building, it would have fallen when the temporary supports were removed. That the slanting pipe which connects the upper with the lower sections is incapable alone of upholding the weight above it was demonstrated by a practical experiment. A similar pipe was placed at the same angle, and it was found that it broke at the joint with less than one-half the weight in question. It is true this experiment was *ex parte*,—such experiments usually are,—but this presents no excuse for arbitrarily rejecting the evidence, especially as it is not traversed or impeached. It was also proved that the branches from the soil-pipe were tightly packed around with brick, slate, and asphalt, and that their flanges rested on the floor, and served to hold the main structure in position. In fact it seems to be clearly established that the drainage system of the "Trinity Factory" is not independent of the building, but a part of it, and dependent upon it for support. If the building settles or rocks, the drainage system must settle and rock with it. One of the witnesses, testifying upon this branch of the controversy, aptly says:

"In the event of the building settling, the whole structure would go with the building, because the apparatus receiving its support from each of the floors, and there being no solid foundation under the drain-pipe of masonry, the earth would naturally give way with the pipe at the bottom, or cause sufficient spring in the pipe to let the whole structure down together. It has to go down, or something breaks."

The complainant's patent is intended to protect various combinations constituting his system of house drainage. This system the defendant has not used. A construction of the claims sufficiently broad to cover the structure of the "Trinity Factory" would also cover any system of drainage where a vertical iron soil-pipe is used connecting with the drain beneath the surface of the earth. There is no infringement of the fifth claim unless it is given a construction so broad that it must fall for lack of invention. The bill must be dismissed.